1

1               IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF GEORGIA
2                   SAVANNAH DIVISION

3

UNITED STATES OF AMERICA,   )
4                       )
      Plaintiff,      )
5                       )
  vs.              )     CASE NO. 4:16-CR-257
6                       )
ROBERT GADSON,         )
7                       )
      Defendant.      )
8 --------------------------

9

10

11

12              TRANSCRIPT OF RULE 11 HEARING
        **BEFORE THE HONORABLE WILLIAM T. MOORE, JR.**
13               United States Courthouse
               125 Bull Street
14                Savannah, GA
             September 28, 2016

15

16

17

18

19 COURT REPORTER:   Kelly McKee Dorsey, CCR, RMR, CCP
                United States Court Reporter
20                 P. O. Box 8552
                Savannah, GA  31412
21                 912-650-4065

22

23     (Proceedings reported by mechanical stenography, transcript
produced by computer-aided transcription.)
24

25

2

1                          APPEARANCES OF COUNSEL

2    FOR THE UNITED STATES OF AMERICA:

3        JOHN THOMAS CLARKSON, Esq.
         U.S. Attorney's Office - Savannah
4        P.O. Box 8970
         Savannah, GA 31412
5        912-652-4422
         Fax: 912-652-4227
6        Email: Thomas.clarkson@usdoj.gov

7    FOR THE DEFENDANT:

8        JONATHAN BOONE PHILLIPS, Esq.
         Phillips & Carson
9        420 W. Broughton Street
         2nd Floor
10       Savannah, GA 31401
         912-232-0081
11       Fax: 877-617-1480
         Email: Jbphillipsesq@gmail.com

12

13

14                          I N D E X

15                                                   PAGE
     WITNESSES
16       Lyndsey Lyon
             Direct Examination by Mr. Clarkson        21
17
     Certificate of Reporter                           29
18

19

20

21

22

23

24

25

3

1             **P R O C E E D I N G S**

2               **(10:31 a.m.)**

3         THE COURT:  Call the first case, please, Ms. Bodaford.

4         THE CLERK:  Yes, Your Honor.  The Court calls the case

5    of the *United States of America vs. Robert Gadson*, Case No. CR

6    4:16-257.  Representing the government is John Clarkson.

7    Representing the defendant is J. Boone Phillips.  This case is

8    called for a change of plea.

9         THE COURT:  Is counsel ready to proceed?

10         MR. CLARKSON:  Ready for the government, Your Honor.

11         MR. PHILLIPS:  Ready, Judge.

12         THE COURT:  All right.  Mr. Phillips, if you and

13    Mr. Gadson would come forward to the lectern, please.

14         Mr. Gadson, give me your full name, please.

15         THE DEFENDANT:  Robert Donnell Gadson.

16         THE COURT:  And where do you live, Mr. Gadson?

17         THE DEFENDANT:  12201 Bedford Drive, Savannah, Georgia.

18         THE COURT:  Now, you've heard the clerk announce your

19    desire to enter a plea of guilty, and that is your right.

20    However, before this court is authorized to accept a plea of

21    guilty it's necessary that I ask you a number of questions.  And

22    the purpose of this hearing is to make a determination whether

23    you're entering this plea freely and voluntarily, whether you

24    understand the rights that are yours that you're giving up by

25    pleading guilty and also whether there's a factual basis for the

4

1    entry of the plea.  And the entire purpose of this proceeding is

2    almost for the last time to allow you to know the importance and

3    the severity of the step that you're about to make and to

4    impress upon you the loss of many of your legal rights.

5            You're reminded that later in this proceeding you will

6    be sworn to tell me the truth.  If you do not tell me the truth,

7    you will be committing perjury for which you could be subjecting

8    yourself to additional punishment for testifying falsely under

9    oath.  Also, if you ever seek to undo or set aside what occurs

10   here today, you're going to be confronted by the answers you

11   give me, so make sure that you understand the words and the

12   questions.  If there's any word or question that you do not

13   understand, you can ask your lawyer for explanation and advice.

14   If necessary, I'll recess this hearing and give you additional

15   time to discuss with your lawyer any matter that may be

16   troubling or concerning to you, and if you need the Court to

17   further explain any matter to you, do not hesitate to ask, and I

18   will stop and I will explain in detail any matter that you need

19   to know.

20           So do you understand, Mr. Gadson, that you have a right

21   to stop this hearing and have questions explained to you?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Do you have any questions now before I ask

24   the clerk to administer the oath?

25           THE DEFENDANT:  No, sir.

5

1          THE COURT:  Will you administer the oath, Ms. Bodaford.

2          THE CLERK:  Yes, Your Honor.  Please raise your right

3     hand to be sworn.

4               ROBERT GADSON, being first duly sworn,

5     testified as follows:

6          THE DEFENDANT:  Yes, I do.

7                         EXAMINATION

8     BY THE COURT:

9     Q.   Mr. Gadson, what is your Social Security Number?

10    A.   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.

11    Q.   How old are you?

12    A.   30.

13    Q.   Are you married?

14    A.   No, sir.

15    Q.   Have you ever been married?

16    A.   No, sir.

17    Q.   Do you have any children?

18    A.   No, sir.

19    Q.   Can you read, write and understand the English language?

20    A.   Yes, sir.

21    Q.   How far did you attend school?

22    A.   I have a GED.

23    Q.   How far did you attend school?

24    A.   Eleventh grade.

25    Q.   Did you complete the eleventh grade or did you drop out in

6

1    the eleventh grade?

2    A.    I got kicked out in the eleventh grade.

3    Q.    And where were you attending school?

4    A.    Savannah High School.

5    Q.    Did you get your GED in the state of Georgia?

6    A.    Yes, sir.

7    Q.    Have you had any other educational training since that

8    time?

9    A.    No, sir.

10    Q.    Have you ever been treated for any mental illness?

11    A.    No, sir.

12    Q.    Have you ever been under the care of a psychiatrist?

13    A.    No, sir.

14    Q.    When was the last time you were treated by a medical

15    doctor?

16    A.    Probably four years ago.

17    Q.    Are you presently taking any kind of medication?

18    A.    Nothing but Tylenol and sinus medicine.

19    Q.    Sinus medicine and Tylenol?

20    A.    Yes, sir.

21    Q.    When was the last time you had any form of alcoholic

22    beverage?

23    A.    Yesterday.

24    Q.    Excuse me?

25    A.    Yesterday.

7

1  Q.    When was the last time you had any illegal drugs or any

2  illegal drug-related substance?

3  A.    Probably about two months ago.

4  Q.    And what was that substance?

5  A.    Marijuana.

6  Q.    Do you clearly understand where you are and why you're

7  here today?

8  A.    Yes, sir.

9  Q.    Do you understand how important this proceeding is for

10  you?

11  A.    Yes, sir.

12  Q.    The Court advises you, Mr. Gadson, that you're presumed

13  innocent, and what it means to be presumed innocent, if you

14  should elect to go to trial in this case, you do not have to

15  prove anything.  The United States Department of Justice is your

16  accuser, and it is the government that must prove the

17  government's version of this offense beyond a reasonable doubt

18  to the satisfaction of a fair and impartial jury before you

19  would be authorized to be convicted.  Do you understand that?

20  A.    Yes, sir.

21  Q.    Also, the Indictment that charges you is nothing more than

22  a formal written charge.  It's not evidence of guilt and it

23  cannot be used against you for that purpose.  Do you understand

24  that?

25  A.    Yes, sir.

8

1    Q.   You also have a right to a speedy and a public trial, and

2    this case is not assigned for trial, but if you elect to go to

3    trial, I'll try your case promptly.  You'd have a right to have

4    your friends, family, press, public attend the trial.  You'd

5    have a right to the assistance of your lawyer at every stage of

6    the proceeding and any appeal if necessary.  Do you understand

7    that?

8    A.   Yes, sir.

9         THE COURT:  Mr. Phillips, are you retained or appointed?

10        MR. PHILLIPS:  I'm appointed, Your Honor.

11   BY THE COURT:

12   Q.   Mr. Gadson, you've sworn under oath to an officer of this

13   court that you do not have funds to hire a lawyer; therefore,

14   Mr. Phillips has been assigned to represent you.  But that in no

15   way should influence your decision to plead guilty because he

16   will continue to represent you throughout any trial and any

17   appeal, and the Court would ensure that he's paid for his

18   representation.  Do you understand that?

19   A.   Yes, sir.

20   Q.   Did the fact that you did not hire a lawyer with your own

21   funds force or influence you to believe that you should plead

22   guilty?

23   A.   No, sir.

24   Q.   In addition to the rights that I've explained to you, if

25   you elect to go to trial, you'd have a right to participate with

9

1   your lawyer in the selection of a jury.  You have a right to

2   confront the government's proof.  You have a right to

3   cross-examine witnesses at trial.  In your own defense you can

4   bring witnesses to testify, and if they will not voluntarily

5   come, we can compel them to come through the subpoena power of

6   this Court.

7        You also have a right to remain silent.  You do not have

8   to testify.  You do not have to incriminate yourself in any way.

9   If you should elect to testify, then your lawyer can examine you

10  and the government lawyer would have a right to cross-examine

11  you.  Do you understand that by pleading guilty you're giving up

12  all of these rights, and if I accept this plea, that will end

13  this case except for sentencing that will take place several

14  months from now?  Do you understand that?

15  A.   Yes, sir.

16  Q.   Mr. Gadson, have you ever pled guilty or been convicted of

17  a crime before?

18  A.   Yes, sir.

19  Q.   Was that a felony offense?

20  A.   Yes, sir.

21  Q.   And where did it occur?

22  A.   In Chatham County.

23  Q.   If you plead guilty in this case, you're going to lose

24  many of your civil rights.  You're going to lose your right to

25  vote, your right to serve on juries, your right to hold public

1    office and your right to ever possess a firearm.  I want you to

2    listen carefully to what I'm telling you about possessing a

3    firearm.  If you plead guilty in this case, for the remainder of

4    your life you may not possess a firearm of any kind.  You can't

5    have it in your home, your automobile, your place of employment.

6    If you're found in possession of a firearm, you'll be arrested

7    and you'll be brought back before this Court or some other

8    Court, and you'll be given a term of imprisonment for that

9    possession.  Do you understand that?

10    A.    Yes, sir.

11    Q.    Do you understand the difference between a plea of guilty

12    and a plea of not guilty?

13    A.    Yes, sir.

14    Q.    A plea of guilty admits that you did what the government

15    accuses you of doing pursuant to your plea agreement with the

16    government.  A plea of not guilty denies the charge and requires

17    the government to prove the charges beyond a reasonable doubt.

18    Do you understand that?

19    A.    Yes, sir.

20    Q.    Mr. Gadson, you may have defenses to these charges; I do

21    not know, but in all likelihood if you plead guilty today,

22    you're going to forever lose your right to complain on appeal

23    about any action of the government, any government agent, the

24    prosecutor, the magistrate judge, your own lawyer, this Court or

25    anyone else as far as any complaint that you might have about

11

1    anything that you say they did or failed to do in your case.  Do

2    you understand that?

3    A.    Yes, sir.

4    Q.    How long have you known Mr. Phillips, your lawyer?

5    A.    Probably like five months.

6    Q.    Have you told him everything you know about the charges

7    against you in this case?

8    A.    Yes, sir.

9    Q.    Have you been truthful with him?

10   A.    Yes, sir.

11   Q.    And has he gone over your case with you and tried to

12   explain to you any possible defenses?

13   A.    Yes, sir.

14   Q.    Have you had enough time to meet and talk with your

15   lawyer?

16   A.    Yes, sir.

17   Q.    How many occasions have you and Mr. Phillips discussed

18   your case?

19   A.    Five occasions.

20   Q.    Have you talked with family and friends about making this

21   decision to plead guilty?

22   A.    Yes, sir.

23   Q.    Are you satisfied with your lawyer and the way that he's

24   represented you in this case?

25   A.    Yes, sir.

1    Q.    Have you read the Indictment and the charges against you?

2    A.    Yes, sir.

3    Q.    Have you gone over those charges with your lawyer?

4    A.    Yes, sir.

5    Q.    In this case, Mr. Gadson, you're charged in two counts of

6    an Indictment.  Counts 1 and 2 charge you with possession of a

7    firearm by a convicted felon, in violation of 18 United States

8    Code Section 922(g)(1), and Count 1 charges you with possession

9    of ammunition by a convicted felon and Count 2.  It's my

10   understanding that you have a plea agreement with the government

11   today that provides that you would plead guilty to Count 1 of

12   the Indictment and the government will dismiss Count 2 of the

13   Indictment.  Is that your understanding?

14   A.    Yes, sir.

15   Q.    Count 1 charges that on or about March 19, 2016, in

16   Chatham County, within the Southern District of Georgia, that

17   you, Mr. Gadson, who before that time had been convicted of a

18   felony offense, an offense punishable by imprisonment for a term

19   exceeding one year, did unlawfully and knowingly possess in and

20   affecting commerce a firearm, that is, one Shooters Arms

21   Manufacturing Model Titan .45 caliber pistol, and it gives the

22   serial number of that pistol, which had previously been

23   transported in interstate and foreign commerce, in violation of

24   Title 18 United States Code Section 922(g)(1), and that is what

25   you're charged with in Count 1 of the Indictment, and that is

13

1   what you're pleading guilty to today.  Do you understand that?

2   A.    Yes, sir.

3   Q.    If you should elect to go to trial in this case, before

4   you could be found guilty on Count 1, the government would first

5   have to prove that you knowingly possessed in or affecting

6   interstate or foreign commerce.  The government would also have

7   to prove that before possessing the firearm, that you had been

8   convicted of a felony, that is, a crime punishable by

9   imprisonment for not more than one year.  The government would

10  have to prove each of those elements beyond a reasonable doubt

11  to the satisfaction of a fair and impartial jury before you

12  would be authorized to be convicted on Count 1.  Do you

13  understand that?

14  A.    Yes, sir.

15          THE COURT:  Mr. Phillips, did you have access to the

16  government's discovery and other materials in this case?

17          MR. PHILLIPS:  Your Honor, I did.

18          THE COURT:  Did you satisfy yourself there's a factual

19  basis for the plea, in other words, that the government can

20  prove your client's guilt beyond a reasonable doubt on Count 1

21  of the Indictment?

22          MR. PHILLIPS:  Yes, sir, I was satisfied.

23  BY THE COURT:

24  Q.    Mr. Gadson, the maximum sentence that the Court could

25  impose on Count 1 would be a sentence of imprisonment of not

1   more than 10 years, a fine of not more than $250,000, supervised

2   release of not more than three years and a $100 special

3   assessment.  However, if you are found to be an armed career

4   criminal pursuant to 18 United States Code Section 924(e), then

5   the maximum term of imprisonment would be not less than 15 years

6   and up to life, a fine of not more than $250,000, supervised

7   release of not more than five years and a $100 special

8   assessment.

9       Now, those are the maximum penalties, but the Sentencing

10   Guidelines that were made effective as of November 1, 1987 will

11   be considered by this Court in an advisory manner when deciding

12   upon the appropriate sentence in your case.  Do you understand

13   that?

14   A.   Yes, sir.

15   Q.   Has your lawyer gone over the guideline information with

16   you?

17   A.   Yes, sir.

18   Q.   Have you tried to learn in your discussions with your

19   lawyer how these Guidelines could affect the sentence in your

20   case?

21   A.   Yes, sir.

22   Q.   And do you understand that the Court is going to consider

23   the guideline ranges as advisory when deciding upon the

24   sentence?

25   A.   Yes, sir.

1   Q.    Do you understand that what your lawyer has told you about

2   the sentence that you may receive is only a guess or an estimate

3   based upon what you've told your lawyer and what he's been able

4   to learn from the Government?

5   A.    Yes, sir.

6   Q.    Do you understand that the Court is not bound by that

7   estimate?

8   A.    Yes, sir.

9   Q.    The sentence that you receive may not be what your lawyer

10  has estimated it to be, because at this time neither you nor

11  your lawyer nor the Probation Office nor the Court nor anyone

12  else knows exactly what the sentence will be.  Do you understand

13  that?

14  A.    Yes, sir.

15  Q.    There are certain matters that are very important, and

16  that is what you've done, whether you've accepted

17  responsibility, the role you played in the criminal activity,

18  whether or not you've obstructed justice and any prior criminal

19  history that you might have.  Do you understand that?

20  A.    Yes, sir.

21  Q.    In certain limited ways the Court has a right to depart

22  from the Advisory Guidelines, downward or upward, and you will

23  have a right to appeal and the government will have a right to

24  appeal the sentence, and even though you have a plea agreement

25  with the government, I want to make it clear that I'm unlikely

16

1    to sentence you outside of the range of your Advisory

2    Guidelines.  Any recommendation from the government will be

3    considered by the Court, but the Court is not bound by a

4    government recommendation.  Do you understand that?

5    A.    Yes, sir.

6    Q.    And even though your sentence may be more severe than you

7    or your lawyer have anticipated, you're still bound by your plea

8    of guilty, and you may not withdraw it.  Do you understand that?

9    A.    Yes, sir.

10   Q.    Under guideline sentencing, Mr. Gadson, parole has been

11   abolished.  You serve the sentence and you will not be released

12   on parole.  Do you understand that?

13   A.    Yes, sir.

14   Q.    Also, supervised release is a very real sentence.  Under

15   supervised release once you're released, you'd have to conduct

16   yourself consistent with the rules of the Court.  You'd have to

17   become employed.  You'd have to not violate any local, state or

18   federal law.  You have to report regularly to the Probation

19   Office.  You have to submit yourself to urinalysis.  You have to

20   do many other things mandated by the conditions of supervised

21   release.  Do you understand that?

22   A.    Yes, sir.

23   Q.    Mr. Gadson, has anyone done anything that you consider to

24   be wrong or unfair which has forced you to plead guilty?

25   A.    No, sir.

17

1          THE COURT:  Let's take up the plea agreement, please,

2     Mr. Clarkson.

3          MR. CLARKSON:  Your Honor, the defendant has agreed to

4     plead guilty to Count 1 of the Indictment.  The government will

5     not object to a recommendation by the Probation Office that the

6     defendant receive an appropriate reduction in offense level for

7     acceptance of responsibility.  The defendant has agreed to pay

8     any restitution caused by the defendant's criminal conduct.  At

9     sentencing the government will move to dismiss Count 2 of the

10    Indictment, which is the only count that remains.

11         The defendant has waived his right to request

12    information about the investigation and prosecution of his case

13    under the Freedom of Information Act and the Privacy Act.  The

14    defendant has waived his rights to protections of Rule 11F of

15    the Federal Rules of Criminal Procedure and Rule 410 of the

16    Federal Rules of Evidence.  If he fails to plead guilty or later

17    withdraws his guilty plea, all statements made by him in

18    connection with the plea and any leads derived therefrom shall

19    be admissible for any and all purposes.

20         The defendant has also agreed to forfeiture of any

21    interest he may have in the firearm identified in Count 1 and

22    the ammunition identified in Count 2.  I can verify the

23    signatures of myself and Criminal Chief Brian Rafferty of the

24    plea agreement, and I can also verify my signature on the

25    consent order of forfeiture that's been prepared.

1          Mr. Phillips, can you verify your signature on the plea

2   agreement?

3          MR. PHILLIPS:  Yes.

4          MR. CLARKSON:  And Mr. Gadson, can you verify your

5   signature on the plea agreement?

6          THE DEFENDANT:  Yes.

7          MR. CLARKSON:  And can you verify, Mr. Phillips, your

8   signature on the consent order of forfeiture?

9          MR. PHILLIPS:  Yes.

10         MR. CLARKSON:  And Mr. Gadson, can you verify your

11  signature on the consent order of forfeiture?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Will you present the agreement to the clerk,

14  please.

15         MR. CLARKSON:  Absolutely, Your Honor.

16  BY THE COURT:

17  Q.   Mr. Gadson, other than the promises made to you in this

18  plea agreement, has any government agent or prosecutor or anyone

19  else made you any promises about this case that you have not

20  disclosed to this Court?

21  A.   No, sir.

22  Q.   Your lawyer has not told you the exact sentence that will

23  be imposed, has he?

24  A.   No, sir.

25  Q.   Do you still wish to plead guilty to Count 1 of the

1  Indictment?

2  A.    Yes, sir.

3  Q.    Are you pleading guilty because you are in fact guilty?

4  A.    Yes, sir.

5  Q.    Do you admit that you violated the law consistent with the

6  charges made against you in Count 1?

7  A.    Yes, sir.

8  Q.    And do you fully understand all the rights and procedures

9  that I've explained to you and that you're giving up by pleading

10 guilty?

11 A.    Yes, sir.

12         THE COURT:   The record will reflect that the defendant,

13 Robert Gadson, lives in the city of Savannah.  He's 30 years of

14 age.  He's not married.  He says he's never been married, and he

15 has no children.  He attended school until the eleventh grade at

16 Savannah High School in this community, but he later received a

17 GED in the state of Georgia.

18         The defendant is not suffering from any obvious physical

19 difficulty.  The Court has observed his appearance, his

20 alertness, his awareness and has considered his answers to my

21 questions, and he has been made fully aware of all the

22 significance of this proceeding.

23         The Court finds the defendant in full possession of his

24 faculties.  He's not under the influence of any pain or

25 medication.  He's not under the influence of any alcohol or

20

1    drugs.  As he stands before the Court today, I am confident that

2    he understands the substance and meaning of the charges, the

3    consequences of his plea and the facts which the government must

4    prove and which by his plea of guilty he admits all the

5    essential elements of the offense.

6         He's had a competent lawyer whom he's known for several

7    months, with whom he's met with on several occasions.  He says

8    he's satisfied with the representation of his lawyer, and the

9    Court finds that Mr. Phillips, the lawyer, has discharged his

10   duties consistent with the standard required.

11        In the Court's opinion the defendant has engaged in this

12   proceeding with intelligence and competence, and he's offered

13   his plea of guilty as a matter of his own free choice.

14        Mr. Gadson, are you pleading guilty freely and

15   voluntarily?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  Has your lawyer, Mr. Phillips, tried to

18   force you or push you into pleading guilty?

19        THE DEFENDANT:  No, sir.

20        THE COURT:  Therefore, I find he's not been coerced or

21   influenced to offer to plead guilty, that the plea is made

22   voluntarily, with an understanding of the charges and the

23   consequences of the plea.

24        May we have a proffer from the Government, please?

25        MR. CLARKSON:  Government calls Special Agent Lyndsey

21

1   Lyon.

2         THE CLERK:  Please raise your right hand to be sworn.

3               LYNDSEY LYON, being first duly sworn,

4   testified as follows:

5         THE CLERK:  Please state your name, your occupation and

6   spell your last name for the record.

7         THE WITNESS:  Lyndsey Lyon, L-Y-O-N.  I work for

8   Savannah-Chatham Metropolitan Police Department and I am a Task

9   Force Officer in the Bureau of Alcohol, Tobacco, Firearms &

10  Explosives.

11                      DIRECT EXAMINATION

12  BY MR. CLARKSON:

13  Q.   And Ms. Lyon, can you please describe the facts of this

14  case?

15  A.   On March 19th of 2016, Savannah-Chatham Metropolitan Police

16  Department officers were in the area of Graydon Street and Cedar

17  Street.  They observed a vehicle, Mr. Robert Gadson's vehicle,

18  run the stop sign at this location.  They followed the vehicle

19  to East Duffy Street.  At this time they observed the vehicle

20  park on the wrong side of the road in front of 1312 East Duffy

21  Street.  At this time they initiated a traffic stop.

22       They ran the tag through GCIC, NCIC.  At this time the tag

23  came back as suspended registration.  They initiated a traffic

24  stop on the vehicle, and the officer made contact with

25  Mr. Gadson.  At this point the officer detected an odor of

22

1    marijuana coming from within the vehicle.  They asked Mr. Gadson

2    to step out of the vehicle.

3         At this point they did a Terry frisk on Mr. Gadson.  They

4    felt a -- the officer felt a long metal object in his right

5    front pocket.  They asked him what the object was and if it was

6    a knife.  He stated that it was a clip, or in other terms a

7    magazine for a firearm.  When he was searched, they found an

8    extended magazine for a .45 caliber firearm in his right front

9    pocket.

10        The vehicle was searched due to the odor of marijuana.

11   They located a Shooters Arms Manufacturing Titan .45 caliber

12   firearm in between the driver's seat and the center console.  It

13   was wedged between the seat.

14        At this point he was detained.  He agreed to speak with

15   detectives and he was transported to a precinct to do so.  He

16   spoke with the detective and stated that he had found the

17   firearm near an abandoned house near the intersection of 40th

18   Street and Burroughs Street.  He said that he found it on the

19   ground and picked it up and put it in his vehicle.  He said he

20   didn't even know what caliber it was.  He admitted to being a

21   convicted felon and stated that he knew he wasn't supposed to be

22   in possession of firearms.

23        He was confirmed to be a convicted felon, had a 2009

24   conviction for criminal damage to property in the second degree,

25   2010 conviction for a felony theft by taking -- or felony theft

23

1    by receiving stolen property, and a 2013 felony for theft by

2    taking.

3         The firearm was transported and shipped in interstate

4    commerce.  It had been manufactured in the Philippines.

5    Q.    The firearm you referenced, the Shooters Arm Manufacturing

6    Model Titan, is that the firearm identified in Count 1 of the

7    Indictment?

8    A.    It is.

9    Q.    And the clip or ammunition that you mentioned, is that the

10   ammunition -- 16 rounds of ammunition mentioned in Count 2 of

11   the Indictment?

12   A.    Correct.

13   Q.    And was any interstate commerce nexus done with respect to

14   the ammunition?

15   A.    It was.

16   Q.    And did that travel in interstate commerce?

17   A.    It did.

18        MR. CLARKSON:  No further questions, Your Honor.

19        THE COURT:  Thank you, Counsel.

20        Mr. Phillips, if you and Mr. Gadson would come back to

21   the lectern, please.

22        Mr. Gadson, you've heard the testimony of Agent Lyons

23   (sic).  Do you agree with that testimony?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Do you have any questions you wish to ask

24

1  the agent?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Do you have any questions, Mr. Phillips?

4          MR. PHILLIPS:  No, sir.

5          THE COURT:  All right.  You may come down.  Thank you.

6          In your own defense -- or excuse me.  In your own

7  defense.

8          In your own words, Mr. Gadson, please tell me what you

9  did insofar as the charge made against you in Count 1 of the

10  Indictment.

11         THE DEFENDANT:  I had possession of a firearm, and I

12  know I wasn't supposed to have a firearm.

13         THE COURT:  Was that on the date and time alleged in the

14  Indictment?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you know of any reason why I should not

17  accept your plea of guilty at this time?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Do you know of any reason, Mr. Phillips?

20         MR. PHILLIPS:  No, sir.

21         THE COURT:  Does the government know of any reason,

22  Mr. Clarkson?

23         MR. CLARKSON:  No, Your Honor.

24         THE COURT:  All right.  Based upon the record made at

25  this proceeding, the Court is satisfied there's a factual basis

25

1    for the plea.  Let the plea be entered, Ms. Bodaford.

2              THE CLERK:  Yes, Your Honor.

3                        (Brief pause)

4              THE CLERK:  The defendant's plea of guilty has been

5    entered, Your Honor.

6              THE COURT:  The plea of guilty is accepted.  The United

7    States Probation Office will conduct a presentence

8    investigation.  When that investigation is complete, they will

9    file a report.  A copy of the report will be made available to

10   you, Mr. Gadson, and to your counsel and to counsel for the

11   government.  When you receive the report, you should review it

12   carefully with your lawyer, and if you and your lawyer think

13   that it contains any errors or if you have any objections to any

14   matters in the report, then you can let those errors or

15   objections be known to the probation officer.  If you cannot

16   resolve those matters with the probation officer prior to

17   sentencing, then the Court will resolve them at the time of

18   sentencing.

19             Now, I've received a report from the Probation Office

20   advising me, Mr. Gadson, that you've been on pretrial

21   supervision and that to date you have complied with all the

22   terms and conditions, and that report recommends continued

23   release subject to the preexisting conditions.

24             It's unusual that I get a report like this recommending

25   continued release when I have a prior felon in possession of a

26

1  firearm.  So I'd like to know why that recommendation is made in

2  this case.

3         Not from you.  I'd like to know -- the recommendation is

4  from the Probation Office.

5         MS. WADE:  Your Honor, to date we haven't had any issues

6  with his pretrial release.  Officer Mills indicated that there

7  was a UA conducted on September 7th.  He was negative for all

8  substances.  He plans to do another urinalysis today.

9         THE COURT:  Well, I know this comes from Mr. Mills, but

10 what I said is it's unusual when I have a firearms case and I

11 have a felon in possession of a firearm that there is even a

12 bond to start with, and then it's unusual that there's a

13 recommendation of continued release after a plea of guilty.  And

14 so is there something special about this case that makes it so

15 different than other cases?

16        MS. WADE:  Not to my knowledge, Your Honor.  It's my

17 understanding that he was given a $20,000 bond, and I don't have

18 any specific reasons as to why this is different.

19        THE COURT:  All right.  Thank you.  What is the position

20 of the United States Attorney's Office?

21        MR. CLARKSON:  Your Honor, we agree with the

22 recommendation.  We had extensive discussions with Probation in

23 setting the bond, and we had some concerns about the criminal

24 history.

25        Judge Smith set the bond at $20,000, and Mr. Gadson

27

1   worked -- or his family worked to get that set.  We understand

2   there's been no issues, so we would agree with the

3   recommendation.

4          THE COURT:  All right.  Thank you, Mr. Clarkson.

5          All right.  Based upon those recommendations,

6   Mr. Gadson, I'm going to allow you to remain free subject to

7   your bond that you're on now and all the terms and conditions of

8   that bond.

9          Before you leave court today, I want you to meet with

10  the Probation Office and give the Probation Office any

11  information that the Probation Office needs, and I want you to

12  meet with the Marshal Service and give the Marshal Service any

13  information that the Marshal Service needs.  And after you've

14  cleared with Probation and the Marshal Service, then you'll be

15  free to go subject to the terms and conditions of your existing

16  bond.

17         But I want to make it clear to you that if it's reported

18  to me that you have in any way violated the terms and conditions

19  of your supervised release, then I will not hesitate to have you

20  immediately arrested.  Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Anything else in this case today,

23  Mr. Phillips?

24         MR. PHILLIPS:  No, sir.

25         THE COURT:  Anything else, Mr. Clarkson?

28

1          MR. CLARKSON:  No, Your Honor.

2          THE COURT:  All right.  We'll be in recess.

3               (Proceedings concluded at 11:03 a.m.)

4                         - - -

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3              I, Kelly McKee Dorsey, Registered Merit Reporter

4     and Certified Realtime Reporter, in and for the United States

5     District Court for the Southern District of Georgia, do hereby

6     certify that pursuant to Section 753, Title 28, United States

7     Code, that the foregoing is a true and correct transcript of

8     the stenographically reported proceedings held in the

9     above-entitled matter and that the transcript page format is in

10    conformance with the regulations of the Judicial Conference of

11    the United States.

12

13                    Dated this 28th day of November, 2016.

14

15

16

17

18              /s/ Kelly McKee Dorsey
      _____

19    KELLY McKEE DORSEY, CCR, RMR, CCP

20    #2731

21

22

23

24

25